KEVIN ROYSTER, Plaintiff THOMAS D. McNAMARA, Defendant

No. COA11-714

(Filed 7 February 2012)

1. **Attorneys—legal malpractice—not barred by collateral estoppel—not barred by the law of the case—sufficient forecast of evidence—summary judgment improper**

The trial court erred by granting summary judgment in favor of defendant attorney in a legal malpractice case. Plaintiff's claim was not barred by the doctrine of collateral estoppel or the law of the case doctrine as the issue decided in the earlier case was not the same issue raised by plaintiff in this case and the issue in the present case and was never litigated or decided at an earlier time. Further, plaintiff forecast sufficient evidence to survive defendant's summary judgment motion.

ROYSTER v. McNAMARA

[218 N.C. App. 520 (2012)]

**2. Attorneys—legal malpractice—damages—emotional injury —improperly dismissed**

The trial court erred in a legal malpractice case by dismissing plaintiff's request for damages for emotional injury. Plaintiff's allegation that he sustained emotional injury was nothing more than a description of the damage that he claimed to have suffered as the result of defendant's professional negligence and did not constitute the addition of an enforceable claim or cause of action that the statute of limitations had run against.

Appeal by plaintiff from order entered 8 December 2010 by Judge Benjamin G. Alford in Onslow County Superior Court. Heard in the Court of Appeals 17 November 2011.

*Jeffrey S. Miller, for Plaintiff-Appellant.*

*Yates, McLamb & Weyher, L.L.P., by Dan J. McLamb and Kathrine E. Fisher, for Defendant-Appellee.*

ERVIN, Judge.

Plaintiff Kevin Royster appeals from an order granting summary judgment in favor of Defendant Thomas McNamara and dismissing his allegation that he is entitled to damages for "emotional" injury. After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court erred by granting summary judgment in favor of Defendant and dismissing Plaintiff's request for damages for "emotional" injury and that this case should be remanded to the Onslow County Superior Court for further proceedings not inconsistent with this opinion.

## I.  Factual Background

Plaintiff; his father, Warren Royster; his grandmother, Barbara Jackson; and his mother, Brenda J. McClain, were involved in the operation of East Coast Imports, a sole proprietorship which purchased wrecked and salvaged automobiles for the purpose of rebuilding and reselling them or using them as a source of second-hand parts. Although East Coast Imports was owned by Ms. Jackson, Warren Royster served as its General Manager, Ms. McClain functioned as its secretary and bookkeeper, and Plaintiff worked as a salesman. An investigation by the License and Theft Division of the North Carolina Division of Motor Vehicles revealed that an individual named Stacey

Greene had purchased a Saturn automobile from East Coast Imports. Although East Coast Imports represented that the vehicle was a 1993 Saturn that had been driven approximately 77,000 miles, the vehicle in question was, in fact, a 1992 Saturn that had been driven for 226,945 miles and had been sold to East Coast Imports as a "parts only" vehicle, which meant that it could not be appropriately registered or licensed for operation on North Carolina roads. The dashboard vehicle identification plate, the vehicle identification decal on the driver's side door, and the odometer had been removed from an unrepairable 1993 Saturn and installed on the 1992 Saturn sold to Ms. Greene in such a manner as to appear original.

On 4 May 2004, Ms. Greene filed a complaint against Warren Royster, Ms. Jackson, Ms. McClain, and Plaintiff, doing business as East Coast Imports, in which she sought to recover damages for fraud and unfair and deceptive trade practices. Plaintiff, Warren Royster, Ms. Jackson, and Ms. McClain retained Defendant to represent them in this proceeding. The action filed by Ms. Greene came on for trial before the trial court and a jury at the 10 October 2005 civil session of Onslow County Superior Court. On 13 October 2005, the jury returned a verdict finding in favor of Ms. Greene on the fraud claim and awarding her $1,911.00 in compensatory damages and $500,000.00 in punitive damages (which was reduced to $250,000.00 in accordance with N.C. Gen. Stat. § 1D-25). On the same date, the trial court entered judgment in accordance with the jury's verdict, as modified.

On 24 October 2005, Plaintiff, Warren Royster, Ms. Jackson, and Ms. McClain filed a motion for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59. On 23 March 2006, the trial court entered an order denying this new trial motion. Plaintiff, Warren Royster, Ms. Jackson, and Ms. McClain noted an appeal to this Court from the trial court's judgment. On 6 November 2007, this Court filed an opinion affirming the trial court's judgment and upholding the denial of the motion for a new trial as to Plaintiff. *Greene v. Royster*, 187 N.C. App. 71, 81-82, 652 S.E.2d 277, 284 (2007).

On 29 October 2008, Plaintiff filed a complaint against Defendant seeking to recover damages for professional negligence. In his complaint, Plaintiff alleged that he had never had any "dealings whatsoever with [Ms.] Greene" or any involvement with "East Coast Imports that in any way impacted [Ms.] Greene" and that, except for Defendant's negligent failure to move for a directed verdict in his favor at trial, Plaintiff would not have had "judgment entered against him in the amount of $251,911.00." In his answer, Defendant asserted

that the trial court's order denying Plaintiff's motion for a new trial and our decision to affirm the trial court's ruling established that "more than a scintilla of evidence" supported Ms. Greene's claims against Plaintiff so that the trial court would have denied a directed verdict motion had one been made on Defendant's behalf. In addition, Defendant asserted that Plaintiff's claims were barred on collateral estoppel and *res judicata* grounds. On 9 July 2009, Plaintiff voluntarily dismissed his complaint against Defendant without prejudice pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(a).

Plaintiff refiled his complaint against Defendant on 2 July 2010. Although the complaint that Plaintiff filed on 2 July 2010 was essentially identical to the one that he had voluntarily dismissed without prejudice on 9 July 2009, Plaintiff did allege for the first time in his refiled complaint that, as a result of Defendant's negligence, "[Plaintiff] [had] been prevented from enjoying a normal life, [was] forced to undergo humiliation and emotional damage, and [had] suffered other damages . . . ." In his answer, Defendant reiterated the defenses that he had asserted in his initial answer and alleged that Plaintiff's claims for "emotional damages and any other emotional distress" should be disregarded because they had not been asserted in Plaintiff's original complaint. On 25 August 2010, Defendant filed a motion seeking summary judgment in his favor on the grounds that (1) the record in the underlying case established as a matter of law that, had a motion for directed verdict in Plaintiff's favor been made at the original trial, it would have been denied; (2) Plaintiff's claim was barred by the doctrines of collateral estoppel and *res judicata*; and (3) Plaintiff's emotional distress claim had not been asserted in his original complaint. On 8 December 2010, the trial court entered an order allowing Defendant's motion. Plaintiff noted an appeal to this Court from the trial court's order.

## II.  Legal Analysis

### A.  Appropriateness of Summary Judgment

[1]  On appeal, Plaintiff contends that the trial court erred by granting summary judgment in favor of Defendant by "giving the Defendant[] the benefits of the doctrine of *res judicata*." Although the trial court appears to have relied on the doctrine of collateral estoppel rather than the doctrine of *res judicata* in deciding to dismiss Plaintiff's complaint, we believe that Plaintiff's challenge to the trial court's decision has merit.

In seeking summary judgment, Defendant contended that there was no genuine issue of material fact concerning whether the injuries that Plaintiff claims to have sustained were proximately caused by Defendant's negligence. More specifically, Defendant argued that Plaintiff's complaint was subject to dismissal because the issue of whether Plaintiff was liable to Ms. Greene on the basis of fraud had been fully and fairly litigated in the underlying case. As a result, Defendant contended that Plaintiff was collaterally estopped from arguing that he had not defrauded Ms. Greene and that Plaintiff could not establish that his alleged injuries were proximately caused by Defendant's negligence because the record developed in *Greene*, "including the Judgment, the jury's verdict, the Order denying [Plaintiff's] Motion for [a] New Trial, all findings of fact and conclusions of law in that Order, and other pleadings and filings[,]" established that a motion for directed verdict, had one been asserted, would and should have been denied.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A defendant may show [that] he is entitled to summary judgment 'by (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim.' " *Young v. Gum*, 185 N.C. App. 642, 645, 649 S.E.2d 469, 472 (2007) (quoting *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, disc. review denied, 340 N.C. 359, 458 S.E.2d 187 (1995)), *disc. review denied*, 362 N.C. 374, 662 S.E.2d 552 (2008). We review an order granting summary judgment *de novo*, *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004), viewing the record evidence in the light most favorable to the nonmoving party. *ABL Plumbing & Heating Corp. v. Bladen Cty. Bd. of Educ.*, 175 N.C. App. 164, 167-68, 623 S.E.2d 57, 59 (2005), *disc. review denied*, 360 N.C. 362, 629 S.E.2d 846 (2006).

In a legal malpractice action, "the plaintiff has the burden of proving by the greater weight of the evidence: (1) that the attorney breached the duties owed to his client, as set forth by *Hodges* [*v. Carter*,] 239 N.C. 517, [519-20,] 80 S.E.2d 144,[145-46, (1954),] and that [the attorney's] negligence (2) *proximately caused* (3) damage to

the plaintiff." *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 365-66 (1985) (emphasis added). In order to establish the necessary proximate cause, "a plaintiff is required to prove that he would not have suffered the harm alleged absent the negligence of his attorney." *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 157 N.C. App. 60, 66, 577 S.E.2d 918, 923 (citation omitted), *disc. review denied*, 357 N.C. 459, 585 S.E.2d 758 (2003). "A plaintiff alleging a legal malpractice action must prove a 'case within a case,' meaning a showing of the viability and likelihood of success of the underlying action." *Formyduval v. Britt*, 177 N.C. App. 654, 658, 630 S.E.2d 192, 194 (2006) (citation omitted), *aff'd by an equally divided court*, 361 N.C. 215, 639 S.E.2d 443 (2007). As a result, in order to avoid an award of summary judgment in favor of Defendant, Plaintiff was required to forecast evidence tending to show that the trial court would have ruled in his favor had Defendant sought a directed verdict at the original trial.

The first issue that we must address in order to resolve the issues raised by Plaintiff's challenge to the trial court's order is whether Plaintiff's professional negligence claim against Defendant is barred by the doctrine of collateral estoppel.[1] The doctrine of collateral estoppel " 'precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding.' " *Lancaster v. N.C. Dep't of Env't & Natural Res.*, 187 N.C. App. 105, 111, 652 S.E.2d 359, 363 (2007) (quoting *Bradley v. Hidden Valley Transp., Inc.*, 148 N.C. App. 163, 166, 557 S.E.2d 610, 613 (2001), *aff'd*, 355 N.C. 485, 562 S.E.2d 422 (2002)), *disc. review denied*, 362 N.C. 236, 659 S.E.2d 734 (2008). As a result, the doctrine of collateral estoppel prevents "the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." Whitacre, 358 N.C. at 15, 591 S.E.2d at 880 (citation omitted). "The elements of collateral estoppel . . . are as follows: (1) a prior suit resulting in a

---

1. Although Plaintiff contends that the trial court erroneously ruled in Defendant's favor on *res judicata* grounds, the proper resolution of this case involves application of collateral estoppel rather than *res judicata* principles. *Res judicata* precludes litigants from asserting the same "claim" in a second suit based on the same cause of action between the same parties or their privies. *Whitacre P'Ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). As a result of the fact that the claim that Plaintiff asserted against Defendant in this case is not identical to the claim that Ms. Greene asserted against him in the underlying case and the fact that the two cases involved different sets of parties, the doctrine of *res judicata* does not apply in this case.

final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." *McDonald v. Skeen,* 152 N.C. App. 228, 230, 567 S.E.2d 209, 211 (citing *Thomas M. McInnis & Associates, Inc. v. Hall,* 318 N.C. 421, 349 S.E.2d 552 (1986)), *disc. review denied,* 356 N.C. 437, 571 S.E.2d 222 (2002).

After thoroughly reviewing the record, we do not believe that the trial court's judgments and orders in the underlying case or our affirmance of the trial court's decision to deny Plaintiff's motion for a new trial are entitled to collateral estoppel effect in this case given that the "issue" decided in the earlier case and the "issue" raised by Plaintiff in this case are not identical and given that the issue raised by Plaintiff in the present case was never actually litigated or decided at an earlier time.

In *Greene,* this Court addressed the issue of whether the trial court properly denied Plaintiff's motion for a new trial, which was predicated upon a contention that the evidence presented at the trial of the underlying case was insufficient to justify finding Plaintiff liable to Ms. Greene. 187 N.C. App. at 81, 652 S.E.2d at 284. As a result of the fact that Plaintiff's motion "[was made] pursuant to . . . [N.C. Gen. Stat. § 1A-1,] Rule 59(a) [](7)", we recognized that " 'it [was] plain that [the] trial judge's *discretionary* order pursuant to . . . Rule 59 for or against a new trial . . . [could] be reversed on appeal only in those exceptional cases where an *abuse of discretion [was] clearly shown.' " *Id. at* 78, 652 S.E.2d at 282 (emphasis added) (quoting *Worthington v. Bynum,* 305 N.C. 478, 484, 290 S.E.2d 599, 603 (1982)); *see also Kinsey v. Spann,* 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000) (stating that "a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion"). After acknowledging that the trial court's instructions concerning the liability issue made reference to Plaintiff, Warren Royster, Ms. Jackson, and Ms. McClain as a group rather than requiring the jury to make individual findings concerning the extent to which each of the named participants in the alleged fraud were liable to Ms. Greene individually and noting that Plaintiff "did not object to the [instructions] when given opportunity by the trial court" or "request that a separate issue be submitted regarding his actions only," *Id.* at 81, 652 S.E.2d at 284, we determined that the jury's verdict was amply supported by evidence, stating that:

ROYSTER v. McNAMARA

[218 N.C. App. 520 (2012)]

(1) defendants intentionally changed the VIN on a 1992 Saturn in a deliberate effort to contravene the law and to conceal the fact that the vehicle was unfit for operation; (2) [Ms. Greene] purchased the vehicle in reliance on defendants' representation that it was a road-worthy 1993 Saturn; and (3) the State of North Carolina impounded the vehicle, leaving [Ms. Greene] without the use of her automobile for more than three years.

*Id.* As a result, we held that the trial court did not abuse its discretion in denying Plaintiff's motion for a new trial. *Id.* at 82, 652 S.E.2d at 284. Simply put, our ultimate holding in *Greene* was that the trial court did not abuse its discretion in denying the motion for a new trial lodged by Plaintiff on the grounds that the record contained sufficient evidence to support a jury verdict against the "defendants."

In this case, however, Plaintiff alleges that Defendant negligently failed to move for a directed verdict at the original trial on the grounds that the record, when viewed in the light most favorable to Ms. Greene, did not contain sufficient evidence tending to show that Plaintiff, individually, was liable to Ms. Greene for fraud.

The standard of review for a motion for directed verdict is whether the evidence, considered in the light most favorable to the non-moving party, is sufficient to be submitted to the jury. A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim.

*Herring v. Food Lion, LLC*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005) (internal citations omitted), *aff'd per curiam*, 360 N.C. 472, 628 S.E.2d 761 (2006). As a result, the issue raised by Plaintiff's claim against Defendant in this case is whether the record developed at the underlying trial, when considered in the light most favorable to Ms. Greene, would have supported a finding that Plaintiff was liable to Ms. Greene for fraud. A determination that the record contained sufficient evidence to support the jury's verdict against the "defendants" is simply not a determination that the record contained sufficient evidence to support a finding that Plaintiff defrauded Ms. Greene. Thus, the issue decided in *Greene* and the issue raised by Plaintiff's claim in this case are not identical. Moreover, the issue of whether the record contained sufficient evidence to support a finding of liability against Plaintiff was not actually litigated or determined in the underlying case given that Defendant failed to make a directed verdict motion on Plaintiff's behalf. As a result, Plaintiff is not collaterally estopped

from asserting a professional negligence claim against Defendant predicated on his failure to seek a directed verdict in Plaintiff's favor at the trial of the underlying case.

In seeking to persuade us to reach a different result, Defendant relies upon our decision in *Whiteheart v. Waller*, 199 N.C. App. 281, 281-83, 681 S.E.2d 419, 420-21 (2009), which arose from the defendant's representation of the plaintiff in connection with a billboard leasing dispute. After the plaintiff failed to pay the rent associated with a billboard located on a particular tract of property, one of the plaintiff's competitors offered to lease the billboard location from the property owner and requested the removal of the plaintiff's billboard in accordance with instructions received from the property owner. *Id.* at 281-82, 681 S.E.2d at 420. In response to this request, the plaintiff sent the property owner a check for past due rent and a proposed new lease, both of which the property owner rejected and returned to the plaintiff. *Id.* at 282, 681 S.E.2d at 420. Even so, the plaintiff failed to comply with the property owner's requests for the removal of the plaintiff's billboard. *Id.* Subsequently, the plaintiff sent a letter informing the recipients that the new occupant of the billboard location was a "lease jumper" and had engaged in "unprofessional, unethical, and despicable" business practices. *Id.* Although the plaintiff's attorney reviewed the letter before it was sent, he failed to advise the plaintiff that sending this letter might result in liability for damages. *Id.* As a result, the competitor and the property owner obtained a damage award against the plaintiff. *Id.* at 283, 681 S.E.2d at 421. After the plaintiff filed an action against his attorney in which he alleged that the attorney had negligently failed to advise him of the fact that he might be held liable in the event that he sent the letter disparaging the competitor, the trial court dismissed the plaintiff's complaint. *Id.* On appeal, we held that the trial court correctly "applied collateral estoppel in determining that the jury verdicts . . . finding the plaintiff liable for malicious prosecution, abuse of process, libel *per se*, unfair and deceptive trade practices, slander of title, unjust enrichment, and *quantum meruit*, established as a matter of law plaintiff's intentional wrongdoing[,]" thus precluding the plaintiff from asserting a legal malpractice claim against his attorney on the basis of *in pari delicto* considerations. *Id.* at 285, 681 S.E.2d at 422.

*Whiteheart* is distinguishable from this case in at least two significant respects. First, our holding in *Whiteheart* was premised upon a determination that "[t]he issue regarding whether [the] plaintiff engaged in intentional acts giving rise to legal liability was litigated

and was necessary for the jury's verdicts and the superior court's judgments against [the] plaintiff." 199 N.C. App. at 284, 681 S.E.2d at 422. In the present case, Defendant correctly contends ·that, in *Greene*, we held that the jury's verdict was amply supported by the evidence. However, the trial court's judgment and our holding in *Greene* only establish that sufficient evidence existed to support the jury's verdict that "[Ms. Greene] [was] damaged by the fraud of the Defendants," rather than by Plaintiff individually. Secondly, our decision in *Whiteheart* was predicated upon the fact that the plaintiff's claim was barred on the basis of *in pari delicto* concerns given that the record clearly established that the plaintiff was "well aware" that his actions were unethical. 199 N.C. App. at 286, 681 S.E.2d at 422-23. Simply put, "[r]egardless of the nature of the advice from [the] defendant, [the] plaintiff knew that the information [he was presenting] was incorrect." *Id.* at 286, 681 S.E.2d at 423. The present record does not support barring Plaintiff's professional negligence claim in this case on *in pari delicto* grounds,[2] given that the entire issue raised by Plaintiff's professional negligence claim is the extent to which the evidence received at the underlying trial supported a finding of liability. Thus, for both of these reasons, we conclude that *Whiteheart* does not control the disposition of the present case.

We do not find Defendant's reliance upon the discussion of the "law of the case" doctrine set out in *Young*, 185 N.C. App. at 645-46, 649 S.E.2d at 472 (affirming a trial court's decision to grant summary judgment in favor of the defendant in a legal malpractice action stemming from the defendant's alleged failure to advise the plaintiff that a prior consent order could be set aside given that the court had already decided that the consent order should remain in full force and effect) persuasive either. According to well-established North Carolina law, "once a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case."

---

2. The *in pari delicto doctrine* "generally forbids redress to one for an injury done him by another, if he himself first be in the wrong about the same matter whereof he complains." *Byers v. Byers*, 223 N.C. 85, 90, 25 S.E.2d 466, 469-70 (1943). As the record in *Whiteheart* clearly established, the plaintiff knew that his actions were improper despite the fact that his attorney failed to attempt to dissuade him from sending the letter on which his liability was, at least in part, predicated. The gravamen of Plaintiff's claim in this case, by contrast, rests on the assertion that, despite the fact that the record did not support a finding of liability, judgment was entered against him because Defendant failed to challenge the sufficiency of the evidence to support a finding that he was liable to Ms. Greene. As a result, there is no basis for finding that the claim that Plaintiff has asserted against Defendant in this case should be barred on *in pari delicto* grounds.

*N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631 (1983). As a result, the "law of the case" doctrine prevents parties from relitigating issues that have already been resolved. *Epps v. Duke University*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849, *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). As we have already established, the issue of whether sufficient evidence existed to support the submission to the jury of Ms. Greene's fraud claim against Plaintiff individually has not been previously addressed or decided. Thus, Plaintiff's complaint is not barred by the "law of the case" doctrine.

Finally, we conclude that Plaintiff has forecast sufficient evidence to survive Defendant's summary judgment motion. As we have already noted, Plaintiff was required to forecast evidence tending to show that "(1) [Defendant] breached the duties owed to his client, as set forth by *Hodges*, 239 N.C. [at 519-20,] 80 S.E.2d [at 145-46] and that [Defendant's] negligence (2) proximately caused (3) damage to [P]laintiff." *Rorrer*, 313 N.C. at 355, 329 S.E.2d at 366. At the hearing on Defendant's summary judgment motion, Plaintiff submitted the transcript of the underlying trial for the trial court's consideration. A careful reading of the transcript indicates that Defendant failed to move for a directed verdict on Plaintiff's behalf. In addition, the investigating officer testified that he had not had "any dealings" with Plaintiff, that he did not "know of anything" that Plaintiff had done in connection with the sale or purchase of Ms. Greene's vehicle, that Plaintiff's name did not appear on any of the documentation concerning Ms. Greene's vehicle, that Plaintiff had nothing to do with the sale of Ms. Greene's vehicle, and that he did not have any information suggesting that Plaintiff had any personal involvement in the sale of two other vehicles which were also under investigation. As a result, we hold that the record reveals the presence of a genuine issue of material fact concerning the extent to which Plaintiff is entitled to recover damages from Defendant based upon his failure to seek a directed verdict concerning the fraud claim that Ms. Greene had asserted against Plaintiff, so that the trial court erred by granting summary judgment in Defendant's favor.

## B. "Emotional" Damages Allegation

[2] Secondly, Plaintiff contends that the trial court erred by dismissing his claim for compensation for "emotional" damages on the grounds that his effort to obtain such damages did not constitute a " 'claim' within the meaning of the [North Carolina] Rules of Civil Procedure." Once again, we conclude that Plaintiff's argument has merit.

ROYSTER v. McNAMARA

[218 N.C. App. 520 (2012)]

"A motion to dismiss under [N.C. Gen. Stat. § 1A-1,] Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory.' " *Forsyth Memorial Hospital. v. Armstrong World Industries*, 336 N.C. 438, 442, 444 S.E.2d 423, 425-26 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991)) (alteration in original). "A statute of limitation or repose may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred by the statute." *Cage v. Colonial Building Co.*, 337 N.C. 682, 683, 448 S.E.2d 115, 116 (1994) (citations omitted). N.C. Gen. Stat. § 1–15(c), which governs the limitations period for professional negligence claims, "provides for a minimum three-year period from occurrence of the last act [of malpractice]; [and] an additional one-year-from-discovery period for injuries 'not readily apparent' subject to a four-year period of repose commencing with defendant's last act giving rise to the cause of action . . . ." *Black v. Littlejohn*, 312 N.C. 626, 634, 325 S.E.2d 469, 475 (1985) (footnote omitted).

According to N.C. Gen. Stat. § 1A-1, Rule 41(a)(1), "a plaintiff may re-file within one year a lawsuit that was previously voluntarily dismissed, and the re-filed case will relate back to the original filing for purposes of tolling the statute of limitations." *Losing v. Food Lion, L.L.C.*, 185 N.C. App. 278, 283-84, 648 S.E.2d 261, 264-65 (2007) (citations omitted), *disc. review denied*, 362 N.C. 236, 659 S.E.2d 735 (2008). "[T]he Rule 41(a) tolling of the applicable statute of limitations applies only to the claims in the original complaint, and not to other causes of action that may arise out of the same set of operative facts." *Id.* at 284, 648 S.E.2d at 265. In other words, "Rule 41(a)(1) extends the time within which a party may refile suit after taking a voluntary dismissal when the refiled suit involves the same parties, rights and cause of action as in the first action." *Holley v. Hercules, Inc.*, 86 N.C. App. 624, 628, 359 S.E.2d 47, 50 (1987) (citations omitted).

Plaintiff filed his original complaint against Defendant within the three-year period set out in N.C. Gen. Stat. § 1-15(c). After taking a voluntary dismissal without prejudice, Plaintiff refiled his complaint in a timely manner. In his refiled complaint, Plaintiff alleged for the first time that, as a result of Defendant's negligence, "[P]laintiff [had] been prevented from enjoying a normal life, [was] forced to undergo humiliation and emotional damage, and [had] suffered other damages . . . ." Defendant argues, in reliance upon our decisions in *Losing*

and *Stanford v. Owens*, 76 N.C. App. 284, 289, 332 S.E.2d 730, 733, *disc. review denied*, 314 N.C. 670, 336 S.E.2d 402 (1985), that this "emotional" injury component of Plaintiff's damage claim is time-barred given that Plaintiff first sought to recover such damages more than four years after the entry of judgment in the underlying case and the denial of Plaintiff's motion for a new trial.

In *Losing*, we held that a plaintiff's claim for invasion of privacy, which had been asserted for the first time in a complaint that had been refiled following a voluntary dismissal with prejudice, was time-barred because the plaintiff had not asserted such a claim in his original complaint. 185 N.C. App. at 283-84, 648 S.E.2d at 264-65. In *Stanford*, we held that the plaintiff's fraud claim was time-barred in a case in which the plaintiff originally filed a complaint alleging negligent misrepresentation, took a voluntary dismissal, and refiled a complaint alleging both negligent misrepresentation and fraud some seven years after the cause of action had accrued. 76 N.C. App. at 288-89, 332 S.E.2d at 733. The present case is not governed by *Losing* and *Stanford*, given that the "new" claims asserted in those cases involved separate causes of action that required proof of separate elements while, in this case, "only one cause of action is asserted, and it is the same cause of action that was asserted in the first [complaint]. . . ." *Holley*, 86 N.C. App. at 627, 359 S.E.2d at 49 (holding that a plaintiff's request for an award of punitive damages that was asserted for the first time in a refiled complaint did not add "an enforceable claim or cause of action that the statute of limitations had run against"). Although North Carolina law recognizes a separate cause of action for intentional or negligent infliction of "severe emotional distress," emotional injury may, in appropriate cases, be awarded as a regular component of compensatory damages in a tort action. *See Iadanza v. Harper*, 169 N.C. App. 776, 778-81, 611 S.E.2d 217, 220-22 (distinguishing between the "severe emotional distress" required to establish a claim for intentional or negligent infliction of emotional distress and the emotional suffering that may be included in a damage recovery in a tort action), *disc. review denied*, 360 N.C. 63, 621 S.E.2d 624 (2005). Plaintiff's allegation that he sustained "emotional" injury is nothing more than a description of the damage that he claims to have suffered as the result of Defendant's professional negligence and "did not [constitute the addition of] an enforceable claim or cause of action that the statute of limitations had run against." *Holley*, 86 N.C. App. at 628, 358 S.E.2d at 50. As a result, the trial court

erred by dismissing Plaintiff's request for compensation for emotional injuries stemming from Defendant's alleged legal malpractice.[3]

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that the trial court erred by granting summary judgment in favor of Defendant with respect to the liability issue and dismissing Plaintiff's request for "emotional" damages. As a result, the trial court's order should be, and hereby is, reversed and this case should be, and hereby is, remanded to the Onslow County Superior Court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges BEASLEY and THIGPEN concur.

---

3. Defendant has not contended on appeal that "emotional" injuries of the type at issue here are not compensable in a legal malpractice action stemming from alleged deficient representation in connection with underlying fraud-based litigation, and we express no opinion on that issue at this time.